Michael P. Alterman, Petitioner *v.* David J. Baker, John F. Burke, and Pennsylvania Board of Probation and Parole, Respondents.

Argued November 18, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Thomas E. Mellon, Jr., Mellon and Mellon,* for petitioner.

*Drew Salaman,* for respondents, David J. Baker and John F. Burke.

*Robert A. Greevy,* Chief Counsel, for respondent, Pennsylvania Board of Probation and Parole.

OPINION BY JUDGE CRAIG, January 12, 1983:

Michael P. Alterman seeks review of a decision by the State Civil Service Commission which concluded that, in promoting the petitioner from parole agent III to parole supervisor II, the Pennsylvania Board of Probation and Parole ("board" or "appointing authority") failed to adhere to the appointment-without-examination promotion requirements of section 501[1]

---

[1] 71 P.S. §741.501.

and violated the anti-discrimination provision of section 905.1[2] of the Civil Service Act, as amended.

We trace the genesis of this case to 1977 when the board promoted Mr. Alterman to parole supervisor II in its Philadelphia office. One of the respondents here, David J. Baker, along with Harold M. Shalon, both unsuccessful candidates for the Philadelphia supervisory post, challenged Mr. Alterman's promotion, alleging that the board discriminated against them by relying solely upon written examinations, thereby contravening section 501's criteria for effecting promotions upon merit and seniority without examination.[3]

The commission agreed with those protestants and, by order of December 27, 1978, directed the appointing authority to (1) vacate the position of parole supervisor II, held by Mr. Alterman in Philadelphia, (2) return him to his former parole agent III position, and (3) proceed to fill the vacancy under any method authorized by the Act.

The board appealed that decision in January of 1979 and, apparently believing that its appeal stayed the commission's December 27 order, retained Mr. Alterman as a parole supervisor II. Only on June 19, 1979 did the board file a motion for a supersedeas of the commission's December 27 order; we granted that motion on September 27, 1979.

---

[2] 71 P.S. §741.905a.

[3] Section 501 provides in pertinent part:

The commission may . . . permit promotions to be accomplished . . . (3) by promotion based upon meritorious service and seniority to be accomplished by appointment without examination, if (i) the person has completed his probationary period in the next lower position, (ii) he meets the minimum requirements for the higher position, and (iii) he receives the unqualified recommendation of both his immediate superior and the appointing authority of his department or agency.

Meanwhile, in April of 1979, the board had announced a parole supervisor II vacancy in its Chester office. Mr. Alterman and Mr. Burke, a supervisor I in the Philadelphia office and one of the respondents here, were two of the five applicants for that position; Mr. Baker did not apply for it. Although the board chose neither Mr. Alterman nor Mr. Burke initially,[4] it later appointed Mr. Alterman to that Chester post on October 22, 1979,[5] recording its personnel action not as a promotion but as a transfer.[6]

Mr. Baker then applied for the supervisory position left vacant by Mr. Alterman's move to Chester;

---

[4] The board originally appointed Madison P. Mullen in August of 1979; it rescinded that appointment on September 10, 1979 because of a civil rights complaint filed against him by one of his parolees.

[5] An excerpt from the minutes of that October 22, 1979 board meeting reads as follows:

CHESTER DISTRICT OFFICE SUPERVISOR POSITION

Motion was made by Mr. Forbes, seconded by Mr. Descano and carried by Board majority that Mr. Michael Alterman be appointed as Chester District Office Supervisor.

Motion was made by Mr. Jacobs, seconded by Mr. Forbes and carried that in connection with this action, the position of Deputy District Office Supervisor in Philadelphia should be announced for promotion within the Agency, subject to approval by the Governor on Mr. Alterman's appointment.

[6] Robert E. Yerger, a personnel analyst IV with the board, testified as follows:

Q: Let's get back to how he [Alterman] got from Philadelphia to Chester and that was a transfer, was it not?

A: Yes.

Q: And, it was not a promotion, was it?

A: No, not at that time.

. . . .

Q: But, his personnel action, was it publically announced as a transfer, was it not?

A: The movement of him to the Chester office in December was recorded as a transfer, yes.

the board, however, selected another applicant. Respondent Baker has not challenged that action.

On May 23, 1980, after Mr. Alterman's transfer to Chester, we affirmed the commission's December 1978 order, described above. *Pennsylvania Board of Probation and Parole v. Baker*, 51 Pa. Commonwealth Ct. 501, 414 A.2d 1117 (1980).

In an apparent attempt to comply with our order and yet effectuate the October 1979 appointment of Mr. Alterman to Chester, agents of the board demoted him to parole agent III on June 25, 1980 and immediately promoted him to parole supervisor II. Before that paper demotion and promotion, the board acquired unqualified recommendations for his repromotion, both from Mr. Alterman's immediate supervisor in Philadelphia and from his immediate supervisor in Chester.

However, when the board demoted and promoted Mr. Alterman, it did not provide notice to other employees of the supervisor II vacancy in Chester. Moreover, the commission found that the appointing authority took no formal action to effect Mr. Alterman's demotion-promotion; indeed, three of the five members of the board were not informed of the June 25, 1980 personnel action until approximately August 1980.[7]

---

In his July 8, 1980 letter to State Civil Service Commission Chairman John A. M. McCarthy, Assistant Attorney General Robert A. Greevy stated that, in considering Mr. Alterman for the Chester position, the board did not credit the petitioner with seniority or experience as a parole supervisor II, but treated him as a parole agent III. Although this letter appears to conflict with Mr. Yerger's testimony, we are not in a position to secondguess the commission on matters of credibility; the commission apparently found Mr. Yerger's testimony more credible.

[7] The record does not identify who within the appointing authority knew, on June 25, 1980 of Mr. Alterman's demotion and promotion, but it does indicate that a majority of the parole board did not know.

Messrs. Baker and Burke then filed complaints with the commission. Although Mr. Baker lacked standing,[8] we regard the Burke complaint as a valid basis for this case.[9]

Based upon these facts, the commission concluded (1) that the board failed to comply with the commission's December 1978 order, affirmed by this court,

---

[8] We agree with the Alterman argument that Mr. Baker has no standing; he never applied for the Chester position, which is the subject of this appeal:

> Q. When the position for the Chester District Office opened up before Mr. Alterman was transferred to it, did you apply for that position?
>
> A. No.
>
> Q. In other words, you didn't want it then, but you want it now?
>
> A. Not exactly. At the time, Chester seemed like a long ways away and there was difficulty in commuting to Chester from where I lived. I assumed that eventually the Civil Service Commission order to have Mr. Alterman demoted and a position vacated here in Philadelphia would be enacted and I would be given the opportunity to apply for that. That's why I was—why I was waiting for that to happen.

Clearly, Mr. Baker is not an "aggrieved" person under 71 P.S. §741.951(b), as the Supreme Court has defined that term. *See Lansdowne Borough Board of Adjustment's Appeal*, 313 Pa. 523, 525, 170 A. 867, 868 (1934) (to have standing, party desiring to appeal must have direct, immediate, pecuniary, substantial interest in particular question litigated; interest may not be in remote consequence of judgment).

Mr. Burke, however, did apply for the Chester vacancy in 1979. Consequently, our decision concerning Mr. Baker's lack of standing to appeal has no effect upon our affirmance of the commission's order with respect to Mr. Burke's complaint.

[9] We cannot accept the Alterman contention that the Burke complaint was untimely under 71 P.S. §741.951(b). We agree with the commission that, although the respondents did not file their complaints until forty-seven days after the petitioner's June 25, 1980 demotion-promotion, the principles of *Butler v. State Civil Service Commission*, 57 Pa. Commonwealth Ct. 406, 426 A.2d 239 (1981), are applicable.

and (2) that Mr. Alterman's June 25, 1980 promotion was improper because, without board action, there was no "unqualified recommendation of the appointing authority"—the board itself—as required by section 501 of the Act.[10]

Mr. Alterman, however, contends that, by appointing him to Chester and filling the Philadelphia vacancy with another applicant, the board did comply with the commission's December 1978 order to vacate the parole supervisor II position in Philadelphia. Moreover, he contends that the board could not return him to his former position, as ordered by the commission, because our grant of a stay temporarily froze his supervisor II classification, thereby making compliance with the 1978 order only possible after we issued our decision in 1980. Finally, Mr. Alterman contends that because the board had previously approved his appointment to Chester, formal board validation of his June 25, 1980 promotion was unnecessary.

---

Testimony reveals that, contrary to its uniform practice, the board did not publicly announce the Alterman promotion. Moreover, the commission found that, although the respondents knew the identity of the chosen applicant, they lacked knowledge of either the date or the nature of the personnel action taken and that, despite efforts to obtain such information from various parole board employees, knowledge of the demotion-promotion remained solely within the control of the appointing authority until July 1980. That finding is bolstered by the fact that even a majority of the board did not learn of Mr. Alterman's promotion until August of 1980. Clearly, then, as in *Butler*, Mr. Burke lacked the legal ammunition with which to pursue his claim.

[10] On March 23, 1982, the Commission unanimously sustained the appeals of Messrs. Baker and Burke and ordered, among other things, that the board vacate the Parole Supervisor II position held by Mr. Alterman and return him to his former position as a Parole Agent III. On April 8, 1982, Mr. Alterman filed a petition for review and an application for supersedeas, pending the outcome of his appeal, which President Judge CRUMLISH granted on April 8, 1982 and which on April 20, 1982 President Judge CRUMLISH ordered to remain in effect until further order of this Court.

We do not agree. In *Baker v. Pennsylvania Board of Probation and Parole,* we held that Mr. Alterman's 1977 promotion to the supervisor I classification violated the requirements of section 501, notwithstanding the location of the particular position. Moreover, there is substantial evidence to support the commission's finding that the board treated Mr. Alterman's appointment to Chester as a transfer, not as a promotion. Because that October 22, 1979 transfer was lateral,[11] based upon a promotion which Mr. Alterman never should have received in the first place, we agree with the commission that he cannot remain in Chester within the supervisor I classification. To reverse the commission's order, as Mr. Alterman requests, would merely perpetuate the discrimination we previously found present in the board's promotion process.

Even if we could agree that our stay made any personnel action but a transfer impossible, we would still uphold the commission's order, because the board, as the appointing authority, never took formal action to sanction Mr. Alterman's June 25, 1980 promotion.

As we noted above, the provision of Section 501 relevant to appointment-without-examination promotions requires that a candidate receive the "unqualified recommendation of . . . the appointing authority. . . ." The commission found, and the petitioner does not dispute, that the appointing authority never considered his June 25, 1980 promotion and that, in fact, a majority of the board never learned of the personnel transaction until August of 1980. Because a majority of the parole board constitutes a quorum and because any official action of the parole board requires a ma-

---

[11] We assume that the board did not treat Mr. Alterman's transfer as a "promotion," as required by 71 P.S. §741.705, because no party presented evidence that the board reassigned the petitioner "from a position in one class to a position in a class for which a higher maximum rate of compensation is prescribed. . . ."

jority vote of those present,[12] there was no official board action approving Mr. Alterman's 1980 promotion. Therefore, it is axiomatic that the petitioner never received the unqualified recommendation of the appointing authority, as required by section 501.

Accordingly, we affirm.

### Order

Now, January 12, 1983, the order of the Civil Service Commission, sustaining the appeal of John F. Burke, Appeal No. 3200, is hereby affirmed. Solely on the ground of lack of standing, the commission's order is vacated as to the appeal of David J. Baker, Appeal No. 3199.

---

[12] Act of August 6, 1941, P.L. 861, §4, 61 P.S. §331.4.